IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**TERRY HONEYCUTT and FRAN HONEYCUTT,**
Husband and Wife, on their own behalf and on behalf
of others similarly situated, **STEVE NADELLE and
LORI NADELLE,** Husband and Wife, on their own
behalf and on behalf of others similarly situated,
**ROBERT W. PHILLIPS,** on his own behalf and on
behalf of others similarly situated, and **PATRICK O.
DOYLE,** on his own behalf and on behalf of others
similarly situated,

       **Plaintiffs,**

v.    No. CIV 07-0184 JCH/RLP

**FARMERS INSURANCE COMPANY OF ARIZONA,
FARMERS INSURANCE GROUP OF COMPANIES,
FARMERS INSURANCE GROUP, INC., FARMERS
INSURANCE EXCHANGE, FIRE INSURANCE
EXCHANGE, and MID-CENTURY INSURANCE
COMPANY,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' *Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment*, filed August 28, 2008 [Doc. 103] and on Plaintiffs' *Motion for Partial Summary Judgment on Coverage*, filed December 18, 2008 [Doc. 115]. The Court having considered the motions, briefs, declarations, and relevant law, and being otherwise fully informed, finds that Defendants' motion is well taken and should be GRANTED, and that Plaintiffs' motion is not well taken and should be DENIED.

## BACKGROUND

This case presents an insurance coverage question. At issue is whether the insurance policies written by Defendants provide coverage for water damage to the interior of a dwelling

only if the damage is result from one of sixteen enumerated perils, or if water damage to the interior of a dwelling is automatically covered as long it is not caused by one of thirteen explicit exclusions to coverage.

The material facts in this case are not in dispute. Each of the named Plaintiffs is a New Mexico resident who purchased a homeowners insurance policy from Defendant Farmers Insurance Company of Arizona ("Farmers").[1] During the period from June through August 2006, each of the named Plaintiffs allegedly sustained interior water damage to his or her home and filed a claim with Farmers for coverage of the damage. Each Plaintiff's claim for interior water damage was denied by Farmers based, at least in part, on Farmers' determination that the interior water damage was not caused by a peril enumerated in the policy. The parties also agree that Endorsement H1604 2nd Edition ("the Endorsement") became effective for Farmers' New Mexico policyholders as of September 16, 2001, and was part of each policy at issue in this case. The parties disagree about the proper interpretation of the Endorsement with regard to coverage.

Farmers placed the provision at the heart of this case in its policies beginning in 2001, by use of the H6104 Endorsement. The Endorsement updated language in SECTION I--LOSSES NOT INSURED, and reads, in relevant part:

**Water Damage**

Acts or omissions of persons can cause, contribute to or aggravate water damage. Also, water damage can occur naturally to cause loss or combine with acts or omissions of persons to cause loss. Whenever water damage occurs, the resulting

---

[1] Plaintiffs Honeycutt, Doyle, and Nadelle each purchased the "Protector Plus Package Policy," while Plaintiff Phillips purchased the "Special Form Homeowners Package Policy." It is undisputed that, for purposes of this case, there are no material differences in the language of these policies. In addition, all Plaintiffs received an identical version of the Endorsement at issue in this case.

> loss is always excluded under this policy, however caused; except we do cover:
>
> 1) Direct physical loss to the dwelling or separate structures caused by water damage resulting from build-up of ice on portions of the roof or roof gutters.
>
> 2) Loss or damage to the interior of any dwelling or separate structures, or to personal property inside the dwelling or separate structures caused by water damage if the dwelling or separate structures first sustain loss or damage caused by a peril described under SECTION I – LOSSES INSURED – Coverage C – Personal Property.
>
> 3) Direct loss to the dwelling or separate structures or personal property if caused by fire or explosion resulting from water damage.

Declaration of Peter H. Mason in Support of Defendants' Motion for Summary Judgment (hereinafter "Mason Dec.") [Doc. 105], Ex. C.

Plaintiffs base their claim on item 2, specifically on the comma setting off the first clause ("loss or damage to the interior of any dwelling or separate structures") from the rest of the sentence. Under Plaintiffs' interpretation, the Water Damage exclusion only bars coverage for personal property that was not damaged by a peril described under SECTION I – LOSSES INSURED – Coverage C – Personal Property ("enumerated peril"). Plaintiffs contend that loss or damage to the interior of a dwelling or separate structure is covered whether or not it was caused by an enumerated peril. Defendants contend that the exclusion bars coverage for losses to the interior of the dwelling or separate structure, as well as for personal property, unless the loss was caused by one of the enumerated perils.

## DISCUSSION

Both parties seek a ruling on the breadth of coverage, namely whether the Endorsement allows Farmers to deny claims for interior water damage on the grounds that the water damage

3

was not caused by an enumerated peril.[2]  Where the facts are undisputed and the only issue is the application of an insurance policy, as in this case, there remains solely a question of law for the Court, and summary judgment is appropriate.[3]  *See Benns v. Cont'l Cas. Co.*, 982 F.2d 461, 462 (10th Cir. 1993); *Gamboa v. Allstate Ins. Co.*, 104 N.M. 756, 758 (1986).

In deciding whether an exclusionary clause is effective to nullify coverage under a policy, the Court must give consideration to the reasonable expectations of the insured.  *See Barth v. Coleman*, 118 N.M. 1, 5 (1994) (citing *Knowles v. United Serv. Auto. Ass'n*, 113 N.M. 703, 705 (1992)).  When considering the insured's reasonable expectations, the Court should "refer to what the hypothetical reasonable insured would glean from the wording of the policy and the kind of insurance at issue, rather than how the particular insured who happens to buy the policy might understand it." *Berlangieri v. Running Elk Corp.*, 132 N.M. 92, 95 (Ct. App. 2002) (citing *Rodriguez v. Windsor Ins. Co.*, 118 N.M. 127, 130 (1994)).  Likewise, an insurer's subjective, but undisclosed, intentions regarding coverage are immaterial. *See Computer

---

[2] Plaintiffs styled their motion as one for partial summary judgment on coverage because, even if they were to prevail on the coverage issue, a fact question would remain regarding whether Farmers could still deny them coverage on another basis.  *See* Plaintiffs' Memorandum in Support of Partial Summary Judgment on Coverage [Doc. 117] at 13-14.  Similarly, Defendants seek partial summary judgment on the coverage issue because, even if they prevail on their interpretation of the policy, Plaintiffs could still raise a fact question regarding whether their interior water damage was caused by an enumerated peril.  *See* Defendants' Memorandum in Support of Motion for Summary Judgment [Doc. 104] at 2, n.2.

[3] Although Plaintiffs raise factual issues in their briefs, such as whether Farmers initially paid interior water damage claims even if the loss was not due to an enumerated peril and whether Farmers internally tracked the savings that accrued from its interpretation of the Endorsement, Plaintiffs do not contend, and the Court does not find, that such issues are relevant to which interpretation of the Endorsement is correct, as a matter of law.  Similarly, Defendants' contentions that they have, from the start, rejected interior water damage claims not caused by an enumerated peril, and that they have consistently trained their claims adjusters to follow their interpretation of the Endorsement, are not material to the Court's legal determination.

*Corner, Inc. v. Fireman's Fund Ins. Co.*, 132 N.M. 264, 266 (Ct. App. 2002).  The reasonable expectations doctrine applies "when the language of an insurance policy or representations of the insurance company lead an insured to reasonably expect coverage."  *Berlangieri*, 132 N.M. at 95.  Judgment against an insured as a matter of law is appropriate if the insured's reading of the policy is not objectively reasonable.  *See id.*

In upholding Defendants' interpretation of the Endorsement against that of Plaintiffs, the Court is well aware of New Mexico's policy that "the rules of contract construction are especially narrow when applied to the exclusionary provisions of insurance policies," *Rummel v. Lexington Ins. Co.*, 123 N.M. 752, 764 (1997), and that "it is the obligation of the insurer to draft an exclusion that clearly and unambiguously excludes coverage."  *Computer Corner*, 132 N.M. at 266.  Indeed, "if the insurer urges an exclusion to coverage that the policy does not clearly express, 'the courts will not write an exception into it by construction, for the purpose of exempting the insurer from liability.'"  *Rummel*, 123 N.M. at 764 (quoting Lee R. Russ & Thomas F. Segalla, *Couch on Insurance*, § 22:30).

The Court finds that the contested portion of the Endorsement, taken in isolation, creates ambiguity concerning coverage.  Certainly, when an ambiguity is found in an insurance contract, it "is usually construed against the insurer, because courts will weigh their interpretation against the party that drafted a contract's language."  *Id.* at 759.  However, "[m]itigating this rule is the requirement that courts adopt the interpretation that is most in accord with reason and the probable expectations of the parties."  *Id.*

An insurance contract should be construed as a complete and harmonious instrument. *See N.M. Physicians Mut. Liab. Co. v. La Mure*, 116 N.M. 92, 95 (1993).  Each part of the

contract is to be accorded significance based on its place in the contract.  *See Manuel Lujan Ins., Inc. v. Jordan*, 100 N.M. 573, 575 (1983).  In construing an insurance contract, "consideration, force, and effect must, if possible, be given to all parts thereof," and policy language should not be disregarded as mere surplusage.  *Mut. Life Ins. Co. of N.Y. v. Weigel*, 197 F.2d 656, 658-59 (10th Cir. 1952).  If a provision appears questionable or ambiguous, the Court should "first look to whether [its] meaning and intent is explained by other parts of the policy."  *Rummel*, 123 N.M. at 758.  When moving beyond the contested sentence in isolation and considing the policy as a whole, the structure and language of the Endorsement, and the examples provided in the policy to explain the Endorsement, the Court finds that Defendants' interpretation is the one "most in accord with reason and the probable expectations of the parties."  *Id*. at 759.

Looking at the structure of the policy, it is broken down into three categories of coverage: Coverage A, which provides coverage for the dwelling; Coverage B, which provides coverage for separate structures on the insured property, such as garages or sheds; and Coverage C, which provides coverage for personal property in the dwelling.

The insuring clause for Coverages A and B provides that "We insure for accidental direct physical loss to property described in Coverage A and B, except as provided in **Section I – Losses Not Insured**."  Mason Dec. [Doc. 105], Ex. A. at 2 (emphasis in original).  With this type of coverage, sometimes referred to as "all risk" coverage, the insured property is covered unless the loss is specifically excluded.  Moreover, the "burden is on the insurer issuing an 'all risk' policy to show that the loss comes within an exclusion specified in the policy."  *Winters v. Charter Oak Fire Ins.*, 4 F. Supp. 2d 1288, 1291 (D. N.M. 1998).

Coverage C, insuring personal property, provides a different type of coverage.  Its

insuring clause provides that "We insure for accidental direct physical loss to property described in Coverage C, but only if caused by one or more of the following perils:..." Mason Dec. [Doc. 105], Ex. A. at 3. The policy then proceeds to name sixteen perils ("enumerated perils"), one or more of which must cause loss to personal property before it will be covered under the policy. *See id*. at 3-4.

The policy's exclusions to coverage are found in Section I – Losses Not Insured. This section lists thirteen exclusions to coverage, such as when a loss is caused, directly or indirectly by wear and tear, faulty construction, or certain types of water damage. *See id*. at 4-5. The exclusions listed in Section I apply to Coverages A, B, and C. In other words, if the loss is caused directly or indirectly by any of the named exclusions, no coverage applies regardless of whether the loss is to a dwelling, separate structure, or personal property.

In 2001, Farmers made the Endorsement part of its policies. The Endorsement modified the exclusion for water damage, modified three other exclusions, modified one of the named perils, and modified several definitions. Only the modified water damage exclusion is at issue in this case. The modified water damage exclusion, placed by the Endorsement in SECTION I--LOSSES NOT INSURED, reads:

> **Water Damage**
>
> Acts or omissions of persons can cause, contribute to or aggravate water damage. Also, water damage can occur naturally to cause loss or combine with acts or omissions of persons to cause loss. Whenever water damage occurs, the resulting loss is always excluded under this policy, however caused; except we do cover:
>
> 1) Direct physical loss to the dwelling or separate structures caused by water damage resulting from build-up of ice on portions of the roof or roof gutters.
>
> 2) Loss or damage to the interior of any dwelling or separate structures, or to personal property inside the dwelling or separate structures caused by water damage if the dwelling

7

> or separate structures first sustain loss or damage caused by a peril described under SECTION I – LOSSES INSURED – Coverage C – Personal Property.
>
> 3) Direct loss to the dwelling or separate structures or personal property if caused by fire or explosion resulting from water damage.
>
> We never, under any circumstances, cover rust, mold, fungus, or wet or dry rot, even if resulting from exceptions 1, 2, or 3 above.

Mason Dec. [Doc. 105], Ex. C.

Plaintiffs contend that, by placing a comma after "[l]oss or damage to the interior of any dwelling or separate structures" in item 2, Farmers indicated its intent to cover interior water damage to a dwelling or separate structure unless it could show that one of the thirteen exclusions to coverage applied, regardless of whether the damage was caused by an enumerated peril.[4] In their interpretation, only damage to personal property needs to be caused by an enumerated peril to be covered. Defendants claim that the exclusion addressed in item 2 bars coverage for losses not only to personal property, but also for losses to the interior of the dwelling or separate structures, unless the loss is caused by an enumerated peril. One important difference between the two interpretations appears to be one of burden shifting--as Defendants interpret the Endorsement, a claimant must demonstrate that the interior water damage to their dwelling or separate structure was caused by one of the sixteen enumerated perils generally only

---

[4] Defendants allege that Plaintiffs have changed their claim over time. Defendants assert that Plaintiffs initially claimed that the Endorsement provided coverage for any interior water damage to dwellings and separate structures, regardless of the cause of the loss, and only now acknowledge that interior water damage to dwellings and separate structures is subject to the thirteen exclusions. *See* Defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment [Doc. 113] at 3-4. The Court believes that Plaintiffs' claim has been consistent throughout the litigation. Regardless, it is now undisputed that Plaintiffs agree that any of the thirteen exclusions to coverage could act to bar coverage for interior water damage to a dwelling or separate structure.

required for personal property (C) coverage, whereas Plaintiffs appear to be interpreting the Endorsement to say that coverage for interior water damage to dwellings or separate structures is presumed, unless the insurance company can meet its burden to demonstrate that one of the other twelve exclusions (other than water damage) applies.

The over-arching principle of the Endorsement's treatment of water damage is that "whenever water damage occurs, the resulting loss is always excluded under this policy, however caused..."  Mason Dec. [Doc. 105], Ex. C.  The clear intent of this language is to establish a broad exclusion from coverage for loss from water damage.  Plaintiffs' interpretation of the Endorsement would carve out a very significant hole within the general exclusion. Clearly, Defendants could have chosen to create such a broad exemption from the exclusion, but the language and structure of the Endorsement indicate that this was not Defendants' intent.

First, looking at the language of sub-paragraph 2, the third reference to "dwelling or separate structures" is rendered nonsensical under Plaintiffs' interpretation.  The Endorsement says that the policy covers "loss or damage to the interior of any <u>dwelling or separate structures</u>, or to personal property inside the <u>dwelling or separate structures</u> caused by water damage if the <u>dwelling or separate structures</u> first sustain loss or damage caused by [an enumerated peril]." *Id*. (emphasis added).  Under Plaintiffs' interpretation, coverage for water damage to personal property is tied solely to the cause of damage to the dwelling or separate structure, as opposed to being tied to the cause of the damage to the personal property, whereas coverage for water damage to the dwelling or separate structure is not tied to the existence of any specific peril. This defies logic.  The more reasonable explanation for the third reference to "dwelling or separate structures" in sub-paragraph 2 is that the reference to the enumerated perils applies to

the entire sub-paragraph, including the first clause.  Under this reading, water damage to the interior of the dwelling and water damage to personal property within the dwelling would be treated the same, with coverage for both being dependent on the dwelling first sustaining a loss caused by an enumerated peril.

Similarly, the structure of the exceptions to the water damage exclusion calls Plaintiffs' interpretation into question.  The Endorsement provides three exceptions to the water damage exclusion, in three separate sub-paragraphs.  Plaintiffs' interpretation would mean that one very broad exception to the exclusion (any interior water damage to a dwelling or separate structure, regardless of cause) was placed in the same subparagraph as an exception with completely different conditions (personal property is only covered if damage was caused by one of the sixteen enumerated perils).  This structure is highly unlikely.  A reading of the subparagraph that is more harmonious and in accord with reason is that the same condition, namely, that damage must be caused by an enumerated peril for coverage to attach, applies to both the interior of a dwelling and to personal property, and that this is why they were discussed in the same subparagraph.

Policy language should not be considered mere surplusage, *Mut. Life Ins. Co.*, 197 F.2d at 658-59, yet that would be the result of subparagraph 1 under Plaintiffs' interpretation of the Endorsement.  Subparagraph 1 says that the policy will cover "[d]irect physical loss to the dwelling or separate structures caused by water damage resulting from build-up of ice on portions of the roof or roof gutters."  Mason Dec. [Doc. 105], Ex. C.  Under Plaintiffs' interpretation of subparagraph 2, loss to the interior of a dwelling or separate structure caused by water damage is automatically covered as long as it is not specifically excluded by one of the

other twelve exclusions in Section I--Losses not Insured. Build-up of ice is not one of the Section I exclusions. Therefore, under Plaintiffs' interpretation, interior water damage to a dwelling or separate structure would be covered even without subparagraph 1, rendering subparagraph 1, as written, mere surplusage. On the other hand, under Defendants' interpretation, interior water damage to a dwelling or separate structure would not be covered without subparagraph 1, because build-up of ice is not one of the sixteen enumerated perils. Thus, only under Defendants' interpretation does the inclusion of subparagraph 1 have meaning.

The examples that the policy provides in the Endorsement following the water damage exclusion, which were "set forth to help [policyholders] understand this exclusion," *id*., also demonstrate that Defendants' interpretation is the most reasonable. The first two examples could support either interpretation, but the third example is conceivable only under Defendants' interpretation. The examples are as follows:

EXAMPLE 1:

> Rain water collects on or soaks into the ground surface. Because of faulty design, construction or maintenance of the residence premises, your neighbor's property or water diversion devices, the water causes loss to the dwelling, separate structures, or personal property. Such loss is not covered by this policy.

EXAMPLE 2:

> A pipe under your sink breaks suddenly and accidently, and water damages your wallpaper, carpeting, and personal property. The water also gets under the dwelling or separate structures causing earth movement which results in cracking of the foundation and walls. The loss to the wallpaper, carpeting and personal property is covered, but the loss to the foundation and walls is not covered by this policy.

EXAMPLE 3:

> Water which has backed up through sewers or drains, or water below ground level causes loss to the dwelling, separate structures or personal property. Such loss is not covered by this policy, regardless of the cause or causes of such water damage.

Mason Dec. [Doc. 105], Ex. C.

Example number one does not support one interpretation over the other. Supporting Plaintiffs' interpretation, it does not explicitly say that coverage is denied even for dwellings and structures because none of the sixteen enumerated perils is met. However, even under Plaintiffs' interpretation, coverage would still be denied because faulty design, construction, or maintenance is one of the thirteen listed exclusions to coverage. Example number two could also support either interpretation. Loss caused by a sudden and accidental discharge from plumbing is an enumerated peril, so it would be covered under Defendants' interpretation. But Plaintiffs' interpretation is also supported because the damage to the dwelling could be covered because it is not caused by any of the thirteen exclusions, and the earth movement damage is excluded because it is one of the exclusions.

Example number three, however, supports only Defendants' interpretation. Back up of water through sewers or water below ground level is not one of the thirteen exclusions. Therefore, if interior damage to a dwelling or separate structure is not covered, it must be because it is not one of the sixteen enumerated perils. Under Plaintiffs' interpretation, the interior damage to the dwelling or separate structure would necessarily covered, because it is not caused by something specifically excluded. Thus, by not covering any damage, example three supports only Defendants' interpretation.

Plaintiffs argue that damage to the interior of a dwelling or separate structure should be covered in more instances than personal property, because Coverage A (Dwelling) and Coverage B (separate structures) are generally "all risk" coverage, while Coverage C (Personal Property) is generally "named peril" coverage. They seek to overlay this general structure of the policy onto

water damage claims, and argue that it is illogical that Defendants would have sought to make Coverage A and B into "named peril" coverage only with respect to water damage. However, the water damage exclusion is also the only exclusion that creates an exception for damage caused by enumerated perils. Each of the other twelve exclusions to coverage apply equally to A, B, and C coverage as well, excluding coverage in the event of their occurrence, with very few exceptions. Only the water damage exclusion references the sixteen enumerated perils as exceptions to the exclusion. Thus, while Plaintiffs are correct that the water damage exclusion is the only part of the policy that makes A and B coverage into "named peril" coverage, it is also the only part of the policy that creates an exception to an exclusion for C coverage on a "named peril" basis. That all three types of coverage are treated the same under the water damage exclusion, as they are under the other exclusions, does not strike the Court as illogical, especially in light of all of the other evidence supporting Defendants' interpretation.

The inclusion of a comma after the first clause of subparagraph 2 of the water damage exclusion was unquestionably a case of poor drafting, and the Court does not lightly overlook punctuation in a contract. However, the Court must endeavor to read the contract in the manner that is most reasonable and in accord with what both parties probably expected. For the reasons discussed earlier, the Court cannot find that the inartful drafting of the one sentence, standing alone, makes Plaintiffs' interpretation of the water damage clause reasonable, because its meaning and intent are explained by other parts of the policy. Therefore, the Court does not find that Plaintiffs had a reasonable expectation of coverage for water damage to the interior of a dwelling or separate structure that was not caused by one of the sixteen enumerated perils contained in the policy.

## **CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendants' *Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment* [Doc. 103] is GRANTED and Plaintiffs' *Motion for Partial Summary Judgment on Coverage* [Doc. 115] is DENIED.

_____
**UNITED STATES DISTRICT JUDGE**